Charles CHAMPÉLLE, Petitioner,

v.

Philip COOMBE, Jr., Respondent.

No. 82 Civ. 5575 (KTD).

United States District Court,
S.D. New York.

July 11, 1983.

Lawrence A. Vogelman, New York City, for petitioner.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for respondent; Joyce Andren, Asst. Atty. Gen., New York City, of counsel.

Charles Champelle, pro se.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Charles Champelle was convicted of robbery in the first degree on October 9, 1979, after a jury trial in New York State Supreme Court, Bronx County, before Ivan Warner, Justice. Mr. Champelle was sentenced as a second felony offender to seven and one-half years to fifteen years. Champelle appealed his conviction on three grounds: one, that the jury instruction on intent violated the due process clause of the Fourteenth Amendment; two, that the court's failure to charge the jury on assault in the third degree deprived petitioner of effective representation of counsel guaranteed by the Sixth and Fourteenth Amendments; and three, that the court's use of a pre-1973 felony conviction to sentence him as a predicate felon violated the constitutional prohibition against *ex post facto* laws. Champelle's conviction and sentence were affirmed by the Appellate Division, First Department without opinion and leave to appeal to the Court of Appeals was denied. He now petitions this court for a writ of habeas corpus. For the reasons discussed below, the writ is denied.

### 1. Erroneous Jury Instruction

Petitioner argues that the jury charge impermissibly shifted the government's burden of proving its case beyond a reasonable doubt. The pertinent portions of the charge read: "a person is presumed to intend the natural and probable consequences of his act," Record at 297, and "under our law, every person is presumed to intend the natural and inevitable consequences of his own voluntary acts . . . ." Record at 298. Petitioner argues that these instructions effectively either removed the issue of intent from the jury's consideration, or improperly shifted the government's burden to prove all elements of a crime beyond a reasonable doubt. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) ("Sandstrom"); *County Court of Ulster*

*County v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). Defense counsel failed to object to the "presumption" language.[1] Petitioner first asserted that the charge was unconstitutional on his direct appeal.

The state challenges petitioner's claim on the merits and alternatively contends that petitioner's failure to object to the charge at trial resulted in a waiver of his right to federal habeas corpus review on this ground. I address the waiver argument first.

■ Under New York law, an exception not explicitly raised at trial may not be initially considered on appeal. N.Y.Crim. Proc.Law § 470.05(2) (McKinney 1971). This statute affords the trial court an opportunity to correct any alleged errors at a time when they are correctable. *Clark v. Coombe,* 544 F.Supp. 799, 803 (S.D.N.Y. 1982) (citing *People v. Robinson,* 36 N.Y.2d 224, 228, 326 N.E.2d 784, 786, 367 N.Y.S.2d 208, 211 (1975)). A narrow exception to the general New York rule allows an appellate court to consider an objection first raised on appeal if the objection involves an alleged violation of a fundamental constitutional right. N.Y.Crim.Proc.Law § 470.15(6)(a); *People v. Patterson,* 39 N.Y.2d 288, 295, 347 N.E.2d 898, 383 N.Y.S.2d 573 (1976), *aff'd,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

Petitioner's *Sandstrom* claim does present a fundamental constitutional issue: the government's obligation to prove a defendant guilty beyond a reasonable doubt. The Appellate Division, therefore, had the option of reviewing the merits of Champelle's appeal, despite defense counsel's failure to object at trial. The court, however, affirmed without opinion. The state argues persuasively that this decision did not constitute a decision on the merits. *See Klein v. Harris,* 667 F.2d 274, 285 (2d Cir.1981); *Gruttola v. Hammock,* 639 F.2d 922, 929 (2d

Cir.1981). Rather, the state contends, it was implicit in the affirmance without opinion that the court did not consider the merits of petitioner's claim.

■ When a state appellate court affirms without opinion the Second Circuit has been reluctant, even when fundamental constitutional rights are at issue, to treat the court's silence as an adjudication on the merits. *Taylor v. Harris,* 640 F.2d 1, 2 n. 3 (2d Cir.1981), *cert. denied,* 452 U.S. 942, 101 S.Ct. 3089, 69 L.Ed.2d 958 (1977); *Martinez v. Harris,* 675 F.2d 51, 54 (2d Cir.1982) ("we feel justified in assuming that the Appellate Division does not exercise its discretion [under N.Y.Crim.Proc.Law § 470.15] and decide a case solely on the merits of a claim *unless it says so.*") (emphasis added). The Appellate Division did not indicate that its affirmance was a decision on the merits. Accordingly, I will assume that petitioner's failure to object precluded review on the merits.

■ When a procedural default forms the basis for a state court's refusal to review the merits of a petitioner's claim, the two-step review of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) is triggered. To preserve a claim for federal habeas review, a petitioner must show "cause" for his procedural default and resulting "prejudice." *Id.* In the instant case, petitioner has put forth no "cause," for his noncompliance with New York's contemporaneous objection requirement. In fact, petitioner never gave any explanation for his failure to object to the jury instruction on intent at trial.

Even assuming cause had been established, petitioner has made no showing of actual prejudice resulting from the contested jury instruction. To demonstrate prejudice, petitioner relies on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) in which the court's charge to the jury was phrased in terms similar to the

---

1. "Counsel's default may stem from simple ignorance or the pressures of trial. We noted in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, however, that a defendant's counsel may deliberately choose to withhold a claim in order to 'sandbag'—to gamble on acquittal while saving a dispositive claim in case the gamble does not pay off." *Engle v. Isaac,* 456 U.S. 107, 128–29 n. 34, 102 S.Ct. 1558, 1572 n. 34, 71 L.Ed.2d 783 (1981).

charge herein.[2] In *Sandstrom,* the Supreme Court reversed the petitioner's conviction because it found that the jury instruction impermissibly shifted the government's burden of proof beyond a reasonable doubt to the petitioner. The Second Circuit has taken a narrow view of *Sandstrom* and recently laid out a two-step process by which a petitioner's claim may be evaluated. A reviewing court first examines whether a particular portion of the trial court's charge runs afoul of *Sandstrom;* then, the court determines whether, in the context of the entire charge, the defect was "cured." *Rock v. Coombe,* 694 F.2d 908, 915 (2d Cir.1982). If the defect is "cured" by other language in the charge, a petitioner has suffered no "prejudice", because it is the entire charge and not only an isolated portion that the jury hears before it retires for deliberation.

█ The portions of the court's charge that refer to presumptions of intention violate *Sandstrom.* When viewed in its entirety, however, the charge "cured" the initial defect. *See Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973).

The court's instructions on the intent issue were "pointed, emphatic, repeated, and direct." *Nelson v. Scully,* 672 F.2d 266, 272 (2d Cir.1982), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982). Language immediately following the first improper portion defines and stresses the importance of the intent element of a crime:

> criminal intent is an intent to do knowingly and wilfully that which is condemned as wrong by law. A criminal intent may be inferred from all the circumstances of the case. It need not be established by direct proof. To constitute the crime, there must not only be the act *but also the criminal intent* and these must occur, *the latter being equally essential with the former.*

Record at 297 (emphasis added). The same passage unequivocally states that the burden to prove criminal intent beyond a reasonable doubt rests with the government:

> ... the burden of showing intent, the intent with which a crime has been committed, *rests upon the prosecution* to establish it by evidence *beyond a reasonable doubt.*

The charge goes on to reiterate the importance of intent and clarify the concept of intent for the jury:

> Intent, and I mean criminal intent, is always an *essential element* to the commission of crimes such as we have herein and it may be proved from circumstances surrounding the transaction and act itself or it may be proved by a combination of both.
>
> Well, what is intent? *Intent is the frame of mind of the perpetrator of the act at the time the act is committed.* You must probe the mind. You must say to yourselves, how are we to determine what a person's intentions are?

*Id.* at 298 (emphasis added). The court then instructed the jury to evaluate all of the evidence and surrounding circumstances in order to determine whether or not petitioner possessed a criminal intent:

> Well, ladies and gentlemen, we can only determine that by one's acts, by one's conduct, by what was done, and by what was said, if anything. You should consider what was allegedly done, what means were allegedly employed, the type of instrument used, if any, and *all the circumstances* and from these surrounding circumstances, you are to determine the intention of the perpetrator at the time.

Immediately following, the judge again uses "presumption" language; in this instance, however, he includes ameliorative language within the same sentence in addition to the curative language contained in the preceding and proceeding paragraphs:

**2.** In *Sandstrom,* the court, when instructing the jury on the issue of intent, stated that "the law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 513, 99 S.Ct. at 2453.

Under our law, every person is presumed to intend the natural and the inevitable consequences of his own, voluntary acts, *and the jury has a right to infer from the results produced, the intention to effect such a result.*

One's mind is compelled, from necessity, to refer to the *acts and the physical manifestation of the intent* exhibited by the results produced as the *safest, if not the only proof,* of the fact to be ascertained.

*Id.* at 298–99 (emphasis added).

Although the use of the "presumed" language could be construed as requiring a mandatory inference, the phrases "you are to determine the intention ..." and "the jury has a right to infer" indicated to the jury that the finding of intent was within their discretion. *See Rivera v. Coombe,* 683 F.2d 697, 701 (2d Cir.1982). Justice Warner's statement that "the existence of criminal intent constitutes a question of fact for determination by you, the jury ...," Record at 297, further emphasized that the government's burden of proving guilt beyond a reasonable doubt on all elements of the crime had not shifted. *Accord Rivera v. Coombe,* 683 F.2d at 701. Rather, the jury was twice instructed to evaluate all the circumstances of the case and draw their conclusions therefrom, keeping in mind that the state had to prove intent beyond a reasonable doubt. The court even cautioned the jury that since direct proof of intent was rarely available, the jury must carefully evaluate the available proof to determine if the government met its burden on this issue. Record at 299. The Second Circuit has upheld similar jury instructions in *Rivera v. Coombe,* 683 F.2d at 699 [3] and *Mancuso v. Harris,* 677 F.2d 206, 210 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 382, 74 L.Ed.2d 514 (1982).

We are hard pressed to see how the jury could have understood these repeated instructions to consider all the evidence in determining intent as requiring it to find intent to kill or to cause serious bodily injury if it found that death or serious injury was the natural and probable consequence of the stabbing.

*Rivera v. Coombe,* 683 F.2d at 701. *See also Nelson v. Scully,* 672 F.2d at 272. The jury in the instant case similarly could not have understood the court's instructions to compel an inference of criminal intent. The court's charge neither shifted the burden of proof to the defendant nor removed the intent issue from the jury's consideration. *See Sandstrom v. Montana,* 442 U.S. at 515, 524, 99 S.Ct. at 2454, 2459. Accordingly, petitioner has not made the showing of cause and prejudice required by *Sykes.* Therefore, based on petitioner's procedural default at trial, consideration of petitioner's first ground for habeas relief is precluded.

**2. Court's Refusal to Charge Jury with Assault in the Third Degree**

Petitioner next asserts that the trial court's refusal to charge the jury with third degree assault, after informing the defense counsel before summation that this charge would be given, deprived petitioner of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments. Petitioner properly objected at trial preserving this issue for review. Record at 217. I find, however, that petitioner's contention is without merit.

At trial, prior to summation, defense counsel requested that a charge of assault in the third degree be given as a lesser included offense of assault in the second degree. Record at 192. Although Justice Warner was not sure that a third degree assault charge was proper, he told both attorneys that the charge would be given. Following defense counsel's summation, the judge stated that after reviewing the law he would not give the charge on assault in the third degree. He found that this crime was not a lesser included offense because the state had to prove an additional element: an intent to cause physical injury. Defense counsel immediately took exception to the judge's ruling. Record at 217.

**3.** Justice Warner also presided over the trial of Rivera.

■ The right to present closing arguments is inherent in the constitutional guarantee of a fair trial. In *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), the Supreme Court recognized the fundamental importance of summations in criminal trials, particularly for the defense, for whom "closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt." *Id.* at 862, 95 S.Ct. at 2555. The *Herring* Court held that a New York statute limiting counsel's opportunity to make a summation of the evidence denied defendant the assistance of counsel guaranteed by the Sixth Amendment. Similarly, New York courts have held that even when defense counsel is afforded an opportunity to sum up, the court's change of its intended jury charge after counsel's summation may deny defendant the effective assistance of counsel. *People v. Teasley,* 73 A.D.2d 548, 423 N.Y.S.2d 4 (1st Dep't 1979); *People v. Richards,* 67 A.D.2d 893, 413 N.Y.S.2d 698 (1st Dep't 1979).

Petitioner contends that Justice Warner's deletion of third degree assault from the jury charge after defense counsel's summation denied defendant his right to effective assistance of counsel. For the reasons discussed below, however, the court's post-summation decision not to submit a third degree assault charge to the jury was harmless.

■ First, it is settled law in New York that a defendant in a criminal case must have the benefit of a charge on a lesser included offense[4] "if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense, but did not com-

mit the greater." N.Y.Crim.Proc.Law § 300.50(1) (McKinney 1982); *see People v. Teasley,* 73 A.D. at 549, 423 N.Y.S.2d at 5–6. In the instant case, the judge reluctantly agreed to defense counsel's request to charge the jury with assault in the third degree as a lesser included offense. Record at 197. As Justice Warner quickly determined, however, such a charge could not be given consistently with New York law. Record at 216–17. In *People v. Baglieri,* 51 A.D.2d 587, 378 N.Y.S.2d 772 (2d Dep't 1976), the defense counsel made the same instruction request. The court held that if a lesser offense requires proof of an element which is not required to establish the greater offense, a lesser included offense charge is improper. *Id.* Accordingly, the court in the instant case properly withheld the third degree assault charge from the jury.[5]

Second, petitioner has not shown that the presentation of his case was prejudiced by the judge's reversal of his earlier decision to charge a lesser included offense. *People v. Richards,* 67 A.D.2d at 893, 413 N.Y.S.2d at 698, cited by petitioner, is not persuasive authority. In that case, defendant was charged with two counts of assault and a related charge of possession of a dangerous weapon. Before summation, defendant requested a jury instruction on a lesser included offense under both assault counts. The court refused. After both summations were concluded, the court informed counsel that it had changed its decision and would submit assault in the third degree as a lesser included offense under count two. The Appellate Division ordered a new trial and held that there was a denial of an

---

4. N.Y.Crim.Proc. Law § 1.20(37) (McKinney 1981) defines a lesser included offense as follows: "When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is with respect to the former, a 'lesser included offense' * *."

5. "A person is guilty of assault in the second degree when:

   *     *     *     *     *     *

6. In the course of and in furtherance of the commission or attempted commission of a felony, ... or of immediate flight therefrom, he, or another participant if there be any, causes physical injury to a person other than one of the participants.

N.Y. Penal Law § 120.05(6) (McKinney 1982). A person is guilty of assault in the third degree when "with intent to cause physical injury to another person, he causes such injury to such person ...." N.Y. Penal Law § 120.00(1) (McKinney 1975).

inherent right to effective summation. In contrast, the court in the instant case omitted a charge it had previously agreed to give. The result was not prejudicial, however, since defense counsel's summation addressed the credibility of the trial witnesses and no specific appeal was made to the jury based on an assumption that a lesser degree of assault would be submitted. Indeed, defense counsel addressed himself solely to the second degree assault charge. Record at 213–14.

The case at bar is also distinguishable from *People v. Teasley,* 73 A.D.2d 548, 423 N.Y.S.2d 4. In that case, defendant's conviction for attempted assault in the first degree was reversed and remanded. The Appellate Division found that the failure of the trial court to charge the jury on a lesser included offense, after informing counsel of its intention to do so, was prejudicial error. Defendant was prejudiced during summation as his counsel effectively invited the jury to convict the defendant on the lesser offenses, yet the lesser offense was not submitted for determination by the jury. No such error occurred in the instant case, because defense counsel did not rely on the court's initial promise in his summation.

Justice Warner's failure to comply with New York's jury charge procedural requirement was harmless. New York's Criminal Procedure Law § 300.10(4) (McKinney 1981) provides in pertinent part:

[t]he court must specifically designate and submit ... those counts and offenses contained and charged in the indictment which the jury are to consider. Such determination must be made, and the parties informed thereof, prior to the summations.

Obviously, the trial court's refusal to charge the jury with assault in the third degree technically violated New York's procedural requirement. The error, however, is not of constitutional dimension and is therefore harmless. *People v. Crimmins,* 36 N.Y.2d 230, 238, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975). The court's action did not violate petitioner's Sixth and Fourteenth Amendment rights. Therefore, petitioner's application for a writ of habeas corpus is denied on this ground.

3. Ex Post Facto Law

Petitioner claims that the sentencing court's use of his 1971 conviction as a predicate felony pursuant to New York Penal Law § 70.06 (McKinney 1982) ("§ 70.06") was in violation of the constitutional ban on *ex post facto* laws.[6] The State argues first that the interpretation of a state penal statute is a matter of state law and therefore presents no constitutional issue for federal habeas review; second, it argues that petitioner's claim also fails on the merits, because New York courts allow § 70.06 to apply to predicate offenses committed before the law was passed. I agree that this final ground for habeas corpus relief is meritless.

Petitioner was convicted of robbery in the third degree, a class D felony, on July 30, 1971, and received a sentence of zero to four years. On October 9, 1979, petitioner was convicted of a class B felony, robbery in the first degree, New York Penal Law § 160.15 (McKinney 1975), and sentenced as a second felony offender pursuant to § 70.06, passed in 1973, to an indeterminate sentence of seven-and-a-half to fifteen years.[7]

**6.** "No state shall ... pass any ... ex post facto laws." U.S. Const., Art. I, § 10, cl. 1.

**7.** Petitioner did not object at sentencing to the imposition of an increased penalty resulting from his second offender status. A companion statute to § 70.06, N.Y.Crim.Proc. Law § 400.21(7)(b) (McKinney 1982), provides, *inter alia,* that "[f]ailure to challenge the *previous conviction* in the matter provided herein constitutes a waiver on the part of the defendant of any allegation of unconstitutionality unless good cause be shown for such failure to make timely

objection." (Emphasis added.) The New York courts remain unsettled, however, on whether or not a failure to object precludes a constitutional challenge to the application of § 70.06. *Compare People ex rel. Ryan v. Smith,* 50 A.D.2d 1078, 376 N.Y.S.2d 338 (4th Dep't 1975), *appeal dismissed* 40 N.Y.2d 988, 390 N.Y.S.2d 929, 359 N.E.2d 437 (1976) (when petitioner admitted his prior felony with knowledge of the increased sentence he would receive as a second felony offender, he waived his right to a hearing under N.Y.Crim.Proc. Law § 400.21, and was estopped from attack-

Evaluation of petitioner's allegations that § 70.06 is a prohibited *ex post facto* law must include an analysis of New York decisional law. A state court interpretation of its penal law is binding on the federal courts "except in extreme circumstances." *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975); *Steiner v. Commissioner of Corrections,* 490 F.Supp. 204, 207 (S.D.N.Y.1980). New York's second offender statute has been held constitutional by the New York courts. For example, in a case similar to the instant one, *People v. Dippolito,* 88 A.D.2d 211, 215, 452 N.Y.S.2d 655, 658 (2d Dep't 1982), the Appellate Division held that sentencing a defendant as a second felony offender under § 70.06, which was not yet passed when the predicate offense was committed, did not violate the ban against *ex post facto* laws. *See also People v. Mangiapane,* 87 A.D.2d 851, 449 N.Y.S.2d 244 (2d Dep't 1982); *People v. Pray,* 50 A.D.2d 987, 376 N.Y.S.2d 691 (3d Dep't 1975). Therefore, absent "extreme circumstances", I must defer to the New York court's construction of § 70.06.

Even assuming that extreme circumstances exist here, petitioner's claim lacks merit. The Supreme Court recently stated that "two critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). Section 70.06 provides enhanced punishment for multiple felony offenders, even if their prior convictions occurred before the effective date of the statute. In the instant case, although a longer sentence ostensibly "disadvantages" petitioner, the statute is not an *ex post facto* law, because it merely provides enhanced punishment for the instant offense, not the prior one. Petitioner's increased punishment does not increase his sentence on the first felony. Accordingly, petitioner's final ground for habeas corpus relief is rejected.

## CONCLUSION

In sum, the petition for a writ of habeas corpus is denied in its entirety.

SO ORDERED.

---

ing the validity of the sentence he received) *with People v. Morton,* 48 A.D.2d 58, 367 N.Y. S.2d 595 (3d Dep't 1975) (a defendant's failure to proceed under N.Y.Crim.Proc. Law § 400.21 to determine whether or not he was a second felony offender, did not amount to a waiver of his right to mount a constitutional challenge to § 70.06). Due to this uncertainty, I will address the substance of petitioner's claim.