Rodney COX (95–A–0751), Petitioner,

v.

Edward R. DONNELLY, Superintendent of Wende Correctional Facility; and Eliot Spitzer, New York State Attorney General, Respondents.

Nos. 99–CV–8216 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

June 12, 2003.

Vered Adoni, District Attorney's Office, Queens County, John M. Castellano, District Attorney, Queens County, Kew Gardens, NY, for Respondents.

Natalie Rea, The Legal Aid Society, Brooklyn, NY, for Petitioner.

## JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

A hearing was held in this matter. Petitioner's counsel was present in person and petitioner was present by telephone. The petition for a writ of habeas corpus is granted.

I. Facts and Procedural History

The following recitation of the facts of the case is based primarily upon the opinion of the New York Court of Appeals affirming petitioner's conviction for second degree murder.

On October 13, 1993, petitioner was visiting Tanisha Brewster when her boyfriend, Eric Copeland, forced his way into her apartment. Once inside, Copeland, nicknamed "Bear" because of his size, told petitioner to leave. When petitioner refused, Copeland punched petitioner twice, knocking him to the floor. Petitioner left the apartment. Then Copeland left.

Later that day, petitioner telephoned Brewster and arranged to stop by her apartment to retrieve the Walkman he had left behind. Petitioner—now armed with a nine-millimeter automatic handgun—entered Brewster's bedroom. Minutes after petitioner's arrival, Copeland also returned to the apartment, forcing his way inside when Brewster opened the door to admit a friend. Repeatedly told to leave, Copeland refused, demanding to know who else was in the apartment. Copeland and Brewster then went into her mother's bedroom,

shouting. While Copeland and Brewster argued, petitioner, still alone in Brewster's bedroom, loaded his handgun.

Copeland began walking toward Brewster's bedroom. Brewster attempted to hold Copeland back. He kicked and shoved her, forcing his way into her room. There, petitioner was standing in the corner holding his gun. At first the men talked calmly. The conversation deteriorated into angry argument. After fifteen minutes, Copeland said, "What are you going to do, shoot me?" In response, petitioner fired one fatal bullet into Copeland's head.

The dissenting judges on the Court of Appeals noted that several months earlier, petitioner's friend told him about a prior incident in which Copeland had attacked the friend in a jealous rage over another girl, wielding a beer bottle as a weapon and persisting in the assault despite receiving multiple defensive stabbings until the police intervened.

Petitioner was charged with murder in the second degree and criminal weapons possession. At his jury trial, the Supreme Court refused to charge the defense of justification to terminate a burglary. During deliberations, the jury sent out a note asking for the "legal definition of intent to kill." The next day the jury wrote that it was "hopelessly deadlocked." Ultimately the jury found petitioner guilty of second degree murder.

On appeal, petitioner argued (1) that the trial court erred in failing to give a justification charge; (2) that the court's instruction on intent to kill was erroneous; (3) that the trial court deprived petitioner of a his right to present a defense by precluding evidence that the victim had previously chased a man with a gun; and (4) that trial counsel was ineffective for failing to object to the court's charge on intent to kill. The Appellate Division affirmed the conviction.

Leave to appeal was granted by the New York Court of Appeals. The Court of Appeals affirmed, discussing at length whether the trial court properly declined to issue a justification instruction to the jury. Two dissenting judges insisted that a justification instruction should have been given. The Court of Appeals also summarily denied on the merits the remainder of petitioner's claims, including his claim of ineffective assistance of counsel for failure to object to an improper intent instruction.

In the present petition for a writ of habeas corpus, petitioner claims only that his trial counsel was ineffective for failing to object to the court's instructions concerning intent to kill. The claim has been exhausted and has not been procedurally defaulted.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002).

III. Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right … to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" mea-

sured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes*, 337 F.3d 253, 260, 2003 WL 253144, *6 (2d Cir.2003) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003).

As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

IV. Application

Petitioner's claim is straightforward: He contends that the "intent to kill" instruction given by the trial court to the jury shifted the burden of proof from the prosecution onto him in violation of clearly established precedent from the United States Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and that habeas relief is warranted on account of counsel's inexcusable and prejudicial failure to object to the trial court's erroneous instruction. Respondent replies by urging that the instruction was not erroneous when read in light of the charge as a whole; that counsel opted not to object to the erroneous charge for strategic reasons; and that any error was nonetheless harmless in light of the overwhelming evidence of petitioner's intent to kill the victim.

The following are relevant portions of the trial court's charge. The passage to which petitioner objects is highlighted:

Under our law, every defendant is presumed to be innocent. And that presumption remains with the defendant throughout the trial. He is cloaked with the protection of this presumption even when you go into the jury room to start your deliberations. And it remains with him until such time as you, the jurors, are convinced beyond a reasonable doubt from the proof submitted that he's guilty of the crimes charged against him.

It is only at that time that the presumption of innocence is destroyed and you would be justified in finding the defendant guilty of a crime.

This places the burden of proof on the People....

The defendant presented witnesses. The fact that he presented a case does not in any way shift the burden of proof from the prosecutor to the defendant. This means that the People must establish each and every element of the crimes charged, with which the defendant is on trial, to your satisfaction beyond a reasonable doubt....

A person is guilty of murder in the second degree when, with intent to cause the death of another person, he causes the death of such person.

In order for you to find defendant guilty of this crime, the People are required to prove, from all of the evidence in the case, beyond a reasonable doubt, each of the following three elements: One, that ... the defendant shot Eric Copeland with a gun.

Two, that the defendant shot the gun with the intent to cause the death of Eric Copeland. According to our law, a person intends to cause the death of another person when his conscious aim or objective is to cause the death of that person.

It is not necessary for the People to establish that the intent to kill was present in the mind of the defendant for any period of time before he shot the gun. It is sufficient if you find that such intent to kill was in the mind of defendant when he shot the gun. *The law states that a person intends the natural consequences of his acts.*

Element number three: That the defendant did acts that caused the death of Eric Copeland.

Therefore, with respect to the first count of the indictment, if you find that the People have proved to your satisfaction, beyond a reasonable doubt, each of these elements as I have just explained them, then you must find the defendant guilty of murder in the second degree. On the other hand, if you find that the People have failed to prove to your satisfaction, beyond a reasonable doubt, any one or more of these three elements, then you must find the defendant not guilty of murder in the second degree.

Trial Tr. at 929–35 (emphasis added). In response to a jury note asking for a list of all the elements in each charge, the trial court repeated the relevant instruction, essentially as originally stated.

"The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes." *Sandstrom*, 442 U.S. at 514, 99 S.Ct. 2450. The court must determine whether the challenged portion of the instruction creates a mandatory presumption or merely a permissive inference. *See Ulster County Court v. Allen*, 442 U.S. 140, 157–63, 99 S.Ct. 2213, 60 L.Ed.2d 777. "Mandatory presumptions ... violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense. A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Francis v. Franklin*, 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (citations omitted).

In *Sandstrom,* the Supreme Court explicitly held that an instruction stating that "the law presumes that a person intends the ordinary consequences of his voluntary acts" could easily be viewed by a reasonable juror as a mandatory presumption, and that such an instruction therefore violates the Fourteenth Amendment requirement that the state prove each element of the criminal offense beyond a reasonable doubt. 442 U.S. at 512, 99 S.Ct. 2450. It is "well established that, while a jury instruction in a criminal case that the law *presumes* that a person intends the ordinary consequences of his voluntary acts violates due process, an instruction that merely *permits* a jury to infer that an accused intends such consequences of such acts is acceptable." *United States v. Nelson,* 277 F.3d 164, 197 (2d Cir.2002) (citing *Sandstrom* and *Francis* ).

Even "if a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole," because other instructions "might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption." *Francis,* 471 U.S. at 315, 105 S.Ct. 1965. Nonetheless, general instructions on the government's burden of persuasion and the defendant's presumption of innocence are insufficient to "dissipate the error in the challenged portion of the instructions." *Id.* at 319, 105 S.Ct. 1965. In sum, an instruction is constitutionally infirm if "a reasonable juror could have understood the challenged portions of the jury instruction ... as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the crucial element of intent, and [if] the charge read as a whole does not explain or cure the error." *Id.* at 325, 105 S.Ct. 1965.

■ In the instant case, the intent instruction would likely have led at least

some reasonable jurors—and perhaps the jury as a whole—to understand that the burden on intent had been shifted to petitioner in contravention of the Due Process Clause. It would be rational and reasonable for a juror to believe on the facts of the case that when petitioner pointed a gun at the man facing him and pulled the trigger, death might result. And yet, petitioner on the facts could have been found not to have intended to kill, but merely to wound or even to frighten a feared aggressor. The prosecutor should have been burdened with the task of proving that it was petitioner's intent to kill. The charge failed to accomplish its required task.

Respondent, by contending that analogous charges have been upheld in cases from the Second Circuit Court of Appeals, ignores the distinguishing contexts of those cases. In *Brayboy v. Scully,* 695 F.2d 62, 66 (2d Cir.1982), the challenged language—"a man is deemed to intend the natural consequences of his acts"—was followed by curative language—"unless the act is done under circumstances or conditions that might preclude the existence of such an intent"—that was absent from the instant case. In *Washington v. Harris,* 650 F.2d 447, 453 (2d Cir.1981), the jury was told only that it "may infer intent from actions"—a permissive rather than mandatory presumption. In *Rivera v. Coombe,* 683 F.2d 697, 701 (2d Cir.1982), the district court's erroneous instruction—that a "person is presumed to intend the natural consequences of his acts"—was deemed cured by statements that the Supreme Court in *Francis* subsequently found to be inadequate.

█ Respondent's argument that it was reasonable for trial counsel not to object to the proposed intent instruction because it was his "strategic choice" to "forego any challenge to the People's proof of intent to kill," Memo. of Law in Opposition to Pet'n for Writ of Habeas Corpus at 31, in lieu of an appeal to the jury to engage in nullification is, in a word, illogical. Even if counsel deemed it wise not to press an "intent" argument by introducing new evidence or by highlighting during summation his client's lack of intent to kill, there could be no strategic disadvantage to requiring the court to properly instruct the jury that it could not shift the burden of proof onto petitioner with respect to intent. *Cf. Harris v. Scully,* 779 F.2d 875, 880 (2d Cir. 1985) (defendant does not concede the intent to kill by asserting the defense of self defense). Because objections to jury charges are ordinarily made outside of the presence of the jury, defense counsel could not have been concerned that an overruled objection to the intent charge would highlight the instruction for the jury.

Serious errors of this type are reviewable for harmlessness. *See Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (applying the *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), "harmless beyond a reasonable doubt" standard to *Sandstrom* violation). Because the harmlessness of the *Sandstrom* error was never reached in the state courts and there is no ruling which commands AEDPA deference, it is unclear what the standard for review for harmlessness should be in this collateral attack. Should it proceed under the "beyond a reasonable doubt" *Chapman* standard (conviction infected by constitutional error must be overturned unless "harmless beyond a reasonable doubt") or under the "substantial and injurious effect or influence" standard of *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (for cases on collateral review, an error is generally considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict")? The correct

standard of review is an open question in this circuit. *See Cotto v. Herbert,* 331 F.3d 217, 253 (2d Cir.2003).

Under either standard, the constitutional error complained of had the potential to be exceedingly harmful, not harmless. Unlike the situation in *Rose,* petitioner's guilt was not plain. Although petitioner conceded at trial that he shot the victim, he did not concede that in doing so he intended to kill him rather than injure him. It is not plain that he is guilty of the intent to kill element required to prove second degree murder rather than manslaughter. While a jury could surmise just such an intent, it could also reasonably infer the contrary. It cannot be said beyond a reasonable doubt that the mandatory presumption on intent issued by the trial court in its instruction was harmless. It is highly likely that the mandatory presumption had a substantial and injurious effect or influence in determining the jury's verdict. This conclusion is buttressed by the fact that the jury at one point seemed to be unable to reach a verdict, and specifically asked for the "legal definition of intent to kill."

Since the court's constitutionally erroneous instruction was not harmless, and counsel lacked a strategic reason for failing to object to the instruction and its shifting of the burden of proof onto petitioner, both prongs of the United States Supreme Court's *Strickland* holding are satisfied.

Federal courts regret having to disagree with a court so eminent and fair as the New York Court of Appeals. The conclusion of the state court was, however, an unreasonable application of United States Supreme Court precedent as set forth in *Sandstrom* and *Strickland.*

V. Conclusion

The petition for a writ of habeas corpus is granted. The prisoner shall be released unless within sixty days the state commences prosecution or takes other action appropriate in light of this decision. This decision is stayed until all appellate proceedings are completed and a final mandate is received by this court.

SO ORDERED.