[861 NE2d 75, 828 NYS2d 260]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL BARTON, Appellant.

Argued November 14, 2006; decided December 19, 2006

**POINTS OF COUNSEL**

*Donald M. Thompson,* Rochester, for appellant. The motion court correctly found Rochester City Code § 44-4 (H) to be unconstitutional. (*Acorn v City of Phoenix,* 798 F2d 1260; *Schaumburg v Citizens for a Better Environment,* 444 US 620; *Loper v New York City Police Dept.,* 999 F2d 699; *Hill v Colorado,* 530 US 703; *Madsen v Women's Health Center, Inc.,* 512 US 753; *Carey v Brown,* 447 US 455; *People v Foley,* 94 NY2d 668; *Broadrick v Oklahoma,* 413 US 601; *Perry Ed. Assn. v Perry Local Educators' Assn.,* 460 US 37; *International Socy. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge,* 876 F2d 494.)

*Michael C. Green, District Attorney,* Rochester (*William Taylor* of counsel), for respondent. County Court properly held that the ordinance is constitutional. (*United States v O'Brien,* 391 US 367; *Perry Ed. Assn. v Perry Local Educators' Assn.,* 460 US 37; *Ward v Rock Against Racism,* 491 US 781; *Clark v Community for Creative Non-Violence,* 468 US 288; *Heffron v International Soc. for Krishna Consciousness, Inc.,* 452 US 640; *People v Foley,* 94 NY2d 668; *Matter of Rogers v New York City Tr. Auth.,* 89 NY2d 692; *Renton v Playtime Theatres, Inc.,* 475 US 41; *Virginia Bd. of Pharmacy v Virginia Citizens Consumer Council, Inc.,* 425 US 748; *Acorn v City of Phoenix,* 798 F2d 1260.)

*Thomas S. Richards, Corporation Counsel,* Rochester (*Jeffrey Eichner* of counsel), for City of Rochester, intervenor. I. Section 44-4 (H) of the Rochester City Code is constitutional. (*Cornelius*

*v NAACP Legal Defense & Ed. Fund, Inc.,* 473 US 788; *United States v O'Brien,* 391 US 367; *Perry Ed. Assn. v Perry Local Educators' Assn.,* 460 US 37; *Frisby v Schultz,* 487 US 474; *Ward v Rock Against Racism,* 491 US 781; *Clark v Community for Creative Non-Violence,* 468 US 288; *Members of City Council of Los Angeles v Taxpayers for Vincent,* 466 US 789; *Heffron v International Soc. for Krishna Consciousness, Inc.,* 452 US 640; *Renton v Playtime Theatres, Inc.,* 475 US 41; *Virginia Bd. of Pharmacy v Virginia Citizens Consumer Council, Inc.,* 425 US 748.) II. Section 44-4 (H) of the Rochester City Code is valid under the New York Constitution. (*Matter of Town of Islip v Caviglia,* 73 NY2d 544; *Stringfellow's of N.Y. v City of New York,* 91 NY2d 382.) III. Section 44-4 (H) of the Rochester City Code is not overbroad. (*Broadrick v Oklahoma,* 413 US 601; *Coates v Cincinnati,* 402 US 611; *Alderman v United States,* 394 US 165; *Houston v Hill,* 482 US 451; *Boos v Barry,* 485 US 312; *Chicago v Morales,* 527 US 41; *International Socy. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge,* 876 F2d 494; *Hill v Colorado,* 530 US 703; *People v Scott,* 26 NY2d 286; *People v Clark,* 71 NY2d 376.)

*Palyn Hung,* New York City, *Jeffrey E. Fogel* and *Arthur N. Eisenberg* for New York Civil Liberties Union, amicus curiae. I. The ordinance, even if content-neutral, is not a reasonable time, place, or manner regulation because it is not narrowly tailored to a significant government interest and does not leave open ample alternative avenues of communication. (*Watchtower Bible & Tract Soc. of N. Y., Inc. v Village of Stratton,* 536 US 150; *Schaumburg v Citizens for a Better Environment,* 444 US 620; *Loper v New York City Police Dept.,* 999 F2d 699; *Hague v Committee for Industrial Organization,* 307 US 496; *Frisby v Schultz,* 487 US 474; *Houston v Hill,* 482 US 451; *Nichols v Village of Pelham Manor,* 974 F Supp 243; *Loper v New York City Police Dept.,* 802 F Supp 1029.) II. The ordinance constitutes a content-based enactment that is not narrowly tailored to the pursuit of a compelling state interest. (*Police Dept. of Chicago v Mosley,* 408 US 92; *Cincinnati v Discovery Network, Inc.,* 507 US 410; *Los Angeles v Alameda Books, Inc.,* 535 US 425; *Perry Ed. Assn. v Perry Local Educators' Assn.,* 460 US 37; *Ashcroft v American Civil Liberties Union,* 542 US 656.) III. The ordinance is facially overbroad. (*Houston v Hill,* 482 US 451; *New York v Ferber,* 458 US 747; *Members of City Council of Los Angeles v Taxpayers for Vincent,* 466 US 789.)

**OPINION OF THE COURT**

READ, J.

On August 4, 2004, defendant Michael Barton was ticketed for violating section 44-4 (H) of the Code of the City of Rochester when he allegedly waded into traffic on a highway exit ramp in downtown Rochester, soliciting money from motorists. Section 44-4 of the Code addresses aggressive panhandling, and subsection (H) specifies that "[n]o person on a sidewalk or alongside a roadway shall solicit from any occupant of a motor vehicle that is on a street or other public place." The Code defines "solicit" as "the spoken, written, or printed word or such other acts or bodily gestures as are conducted in furtherance of the purposes of immediately obtaining money or any other thing of value" (Rochester City Code § 44-4 [B]). Violations are punishable by fines ranging from $25 to $250, or an appropriate alternative sentence; a second conviction within a year could result in imprisonment for up to 15 days (Rochester City Code § 44-4 [I]).

Section 44-4, approved by the City Council and the Mayor of the City of Rochester in the spring of 2004, was nearly a decade in the making, spurred by the increasing incidence of panhandling in the downtown area and attendant citizen complaints. Subsection (A) of section 44-4, entitled "Legislative intent," states that this provision was

> "adopted in order to protect persons from threatening, intimidating or harassing behavior, to keep public places safe and attractive for use by all members of the community and to maintain and preserve public places where all of the community can interact in a peaceful manner. *This legislation is also intended to provide for the free flow of pedestrian and vehicular traffic on the streets and sidewalks in the City*, to promote tourism and business and preserve the quality of urban life" (emphasis added).

The Council loosely patterned section 44-4 after panhandling ordinances adopted in other cities, including Atlanta, Baltimore, Cincinnati, New Haven, New York City, Philadelphia, Portland, San Francisco, Seattle and Washington, D.C.

As the Council's President explained, subsection (H) of section 44-4 was "aimed at specific conduct, and not at any type of speech or expression," because "[t]he conduct itself is offensive, for it leads to an interference with the free flow of vehicular traffic and raises traffic safety and traffic congestion concerns." In particular,

"[s]olicitation of contributions from occupants of motor vehicles is disruptive to the drivers of those vehicles and diverts their attention from the traffic on the street. Even if the vehicle is stopped, the driver is not paying attention to potential hazards in the road, observing traffic control signals, or preparing to move along the street or through the intersection."

Further, section 44-4 (H) treats all solicitation "the same whether it be for an individual or a charity, and whether the cause may be deemed by some to be favored or disfavored."

On August 31, 2004, defendant moved to dismiss the accusatory instrument lodged against him. He contended that section 44-4 (H) was overbroad in violation of the Free Speech clauses of the federal and New York State constitutions. Defendant did not argue that section 44-4 (H) was unconstitutional as applied to him. Rather, he complained that this provision impermissibly "impact[ed] activities beyond its intended reach" as it applied not only to aggressive panhandling, but "to anyone who would solicit" motorists from the sidewalk, including an individual holding up a sign simply stating "Food," or participating in the city firefighters' annual "Fill-the-Boot" fundraising campaign.

City Court agreed, declaring section 44-4 (H) unconstitutional and dismissing the accusatory instrument. The court cited *Perry Ed. Assn. v Perry Local Educators' Assn.* (460 US 37, 45 [1983]) for the relevant constitutional standard: "The state may . . . enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." In City Court's view, section 44-4 (H) was content-neutral, but lacked narrow tailoring because it "allow[ed] for the prosecution of those . . . guilty of nothing more than peacefully asking for assistance" (8 Misc 3d 291, 298 [Rochester City Ct 2004]).

County Court reversed, concluding that section 44-4 (H) was content-neutral, sufficiently narrowly tailored, and left open ample alternative channels of communication. The court observed that section 44-4 (H) was "aimed specifically at a certain type of conduct engaged in at a certain location"—the "use [of] spoken or written words or acts, for the purpose of immediately obtaining money or any other thing of value from an occupant of a motor vehicle that is on a street or other public place" (12 Misc 3d 322, 330 [Monroe County Ct 2006]). The

court further pointed out that section 44-4 (H) was not overbroad because it applied to bona fide charitable canvassing as well as to defendant's soliciting. "Because a statute is evenhanded and applies equally to all persons conducting the same unwanted conduct does not make a statute overbroad" (*id.*) In short, section 44-4 (H)'s "overbreadth, if any, [was] not substantial when judged in relation to the [provision's] plainly legitimate sweep" (*id.*). Upon defendant's application, a Judge of this Court granted leave to appeal. We now affirm.

As an initial matter, for purposes of this appeal the People do not contest, and we therefore assume, that panhandling is speech or expressive conduct safeguarded by the First Amendment, entitled to protection tantamount to that afforded eleemosynary appeals by organized charities (*see Schaumburg v Citizens for a Better Environment*, 444 US 620 [1980] [holding that there is sufficient nexus between solicitation by organized charities and a variety of speech interests to implicate First Amendment]). The United States Supreme Court has yet to rule on this issue, and lower courts have expressed differing views (*e.g. compare Young v New York City Tr. Auth.*, 903 F2d 146, 154 [2d Cir 1990], *cert denied* 498 US 984 [1990] [sustaining prohibition on begging in subways, reasoning that panhandling is not constitutionally protected speech or expressive conduct analogous to solicitation by organized charities: "Whether with or without words, the object of begging and panhandling is the transfer of money. Speech simply is not inherent to the act; it is not of the essence of the conduct"], *with Loper v New York City Police Dept.*, 999 F2d 699, 704 [2d Cir 1993] [enjoining enforcement of statute prohibiting public loitering for purposes of begging, concluding that there is "little difference between those who solicit for organized charities and those who solicit for themselves in regard to the message conveyed," and that "(t)he distinction is not a significant one for First Amendment purposes"]). Second, even though defendant's own conduct may be unshielded by the First Amendment, he nonetheless may challenge section 44-4 (H) as overbroad on behalf of others whose constitutionally-protected expression is potentially "chilled" by the provision's very existence (*Broadrick v Oklahoma*, 413 US 601, 610-613 [1973]).

The test for determining overbreadth is whether the law on its face prohibits a real and substantial amount of constitutionally protected conduct (*see Houston v Hill*, 482 US 451, 458 [1987]; *Broadrick*, 413 US at 615). "[T]he mere fact that one

can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge" (*Members of City Council of Los Angeles v Taxpayers for Vincent*, 466 US 789, 800 [1984]). Here, section 44-4 (H) reaches any solicitation intended to obtain immediate funds or things of value from occupants of motor vehicles in Rochester's streets or other public places. Defendant claims that because section 44-4 (H) on its face concededly reaches "passive" panhandling targeting motorists—specifically, someone standing mute on the sidewalk, facing traffic in the street and holding a sign requesting immediate money or food—it is unconstitutionally overbroad. According to defendant, section 44-4 (H) thus runs afoul of the First Amendment because it is not limited to panhandlers who act aggressively, or solicit motorists successfully or actually walk into a lane of stopped or moving traffic. As this appeal is presented to us then, the parties dispute whether section 44-4 (H) is a reasonable time, place and manner restriction once it sweeps defendant's hypothetical passive panhandler within its coverage.

■ "[C]ontent-neutral regulations of time, place, and manner of expression are enforceable if they are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication" (*International Socy. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge*, 876 F2d 494, 497 [5th Cir 1989] [citing *Perry*, 460 US at 45]; *see also Matter of Rogers v New York City Tr. Auth.*, 89 NY2d 692 [1997] [indicating that public forum analysis under article I, § 8 of State Constitution mirrors federal standard]). In this case, the governmental interests served by section 44-4 (H)—to eliminate a source of distraction for motorists and thus promote the free and safe flow of traffic—are significant. Further, section 44-4 (H) is not a blanket ban (*cf. Loper*, 999 F2d at 705). This provision does not prohibit requests seeking something other than a handout. Moreover, section 44-4 (H) does not proscribe nonaggressive soliciting directed at pedestrians on the sidewalk; therefore, it leaves open ample alternative avenues to communicate any message of indigency or need through begging.

In determining whether a regulation is content neutral, the principal inquiry is

"whether the government has adopted a regulation of speech because of disagreement with the message

it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech" (*Ward v Rock Against Racism*, 491 US 781, 791 [1989] [internal quotation marks and citations omitted]).

Content neutrality is not negated because a sign must be read by the police in order to determine whether section 44-4 (H) has been violated (i.e., whether the sign's message seeks to obtain money or any other thing of value on the spot), as defendant argues. The Council's reason for adopting section 44-4 (H)—to promote the free and safe flow of traffic—is the relevant consideration, and the ban covers all those asking motorists for immediate donations, regardless of their message (*see Heffron v International Soc. for Krishna Consciousness, Inc.*, 452 US 640, 648-649 [1981] [speech restriction applying impartially to all persons or organizations, whether charitable or commercial, is content neutral]). Section 44-4 (H) does not attempt to silence one particular message; it does not frown on any particular viewpoint. Nor is it important that section 44-4 (H) may not reach every speech-related side-of-the-road distraction or source of traffic disruption in downtown Rochester; i.e., that it has "an incidental effect on some speakers or messages but not others."

Next, although "a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests . . . it need not be the least restrictive or least intrusive means of doing so" (*Ward*, 491 US at 798). Instead,

"the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. . . . So long as the means chosen are not substantially broader than necessary to achieve the government's interest . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative. The validity of [time, place, or manner] regulations does not turn on a judge's agreement

with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted" (*id.* at 799-800 [internal quotation marks and citations omitted]).

Section 44-4 (H) was designed to address a specific problem brought to the Council's attention: individuals seeking handouts from occupants of motor vehicles on a public thoroughfare or place, thereby creating a hazard and slowing or snarling traffic. Because section 44-4 (H) focuses on specific conduct that the City has an interest in controlling in order to further a significant content-neutral government interest, it is narrowly tailored.

Accordingly, the order of County Court should be affirmed.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, SMITH and PIGOTT concur.

Order affirmed.