OPINION OF THE COURT
Frank J. LaBuda, J.
Appellant is appealing his conviction of February 8, 2010, after a bench trial in the Town of Highland Justice Court (Honorable Kathryn Sweeney), pursuant to Environmental Conservation Law, regulation 6 NYCRR 189.3 (b), “Prohibitions”— “Feeding wild white-tailed deer or wild moose in New York.”
Appellant submitted a brief and appendix. Respondent submitted an answering brief and supplemental appendix. The court is in receipt of the record on appeal, as well as a transcript of the digitally recorded proceedings from the Town of Highland Justice Court Clerk.
Facts
It must be noted from the outset that this case does not involve hunting over bait. The defendant was not charged with *623 violating any laws, codes or regulations involving hunting or baiting.[1]
Both parties stipulated for appeal to the following facts. On October 13, 2009, the Department of Environmental Conservation (DEC) received an anonymous telephone complaint about a pile of apples and a “deer stand” located in the woods behind the private property of 154 Mail Road in Barryville, Sullivan County, New York. A conservation officer[2] responded to the location, which is a rural and mountainous area of Sullivan County, two days later. He entered the woods behind the subject property and discovered two tree stands and a 55-gallon drum of mixed apples and pears. He also observed a five-gallon hollowed out plastic drum with rotten fruit and two empty containers with what he classified as “bear bait,” a food substance favored by bears.
Based upon his experience and training, the Officer opined that baiting usually occurred within a few days of the start of bow season, which was on October 17, 2009, and therefore became suspicious of possible DEC violations. He diligently proceeded to stake out the location, which included appellant’s home, on October 17, 19, and 20. At no time during his “stake out” did the Officer observe anyone in the tree stand or in the vicinity of the property where food/fruit had been left.
On October 20, 2009, the same anonymous source telephoned with another complaint that baiting had occurred in the woods behind 154 Mail Road, and now a bag of apples was leaning up against the outside of the house located at that address. Two days later, the same person called in a third complaint. The Officer, off from work that day, decided to go to the site, but once again found no one on the property or setting the food out. The Officer did observe syrup on trees, animal scat, and some unidentified seeds near the tree stand in the woods, indicating that deer had been in the area. A photograph from a trail cam[3] confirmed the Officer’s suspicion that a deer was feeding on the trail near the tree stand in the woods.
On November 1, 2009, the Officer knocked on the door of the house at 154 Mail Road. Appellant, the property owner’s *624 boyfriend, identified himself with his New York driver’s license. He stated that he did not know about the tree stand because he and his girlfriend never go back there and are unsure if it is even their property. The Officer proceeded to look in the garage and found additional bags of apples similar to those found near the tree stand. Appellant explained that a coworker occasionally delivers old fruit to the house so that he, appellant, can feed the wildlife that comes into the yard.[4]
The parties dispute what appellant actually said to Officer Bello during the conversation on November 1. Officer Bello testified, “He feeds deer all year long, he feeds it; he likes to see the wildlife,” and “he was trying to attract the deer in so his kids could see the deer and how beautiful they are in New York State.” Appellant testified that he said, “I feed the wildlife there was never any mention of deer.” Appellant admitted to placing apples in his backyard at 154 Mail Road, but not in the woods, to help the wildlife stay alive during the winter. Officer Bello proceeded to issue appellant an appearance ticket for deer feeding.
Appellant’s bench trial and sentencing took place on February 8, 2010. The Officer professionally and competently presented the People’s case through his own testimony and photographic exhibits, and appellant, pro se, testified in his own defense. Both were credible and convincing witnesses as to the facts.
During the defense case-in-chief, appellant wished to introduce evidence of the complainant’s criminal history, but the trial judge correctly prohibited appellant from testifying about the complainant’s prior arrests and convictions as irrelevant. There was also a colloquy between Judge Sweeney and appellant over whether it was an offense to throw apples into his own backyard. Judge Sweeney denied appellant’s argument that it was legal to throw apples in his backyard stating, “You are not allowed to throw those apples out there. You are not permitted to do it. . . *625 I understand that if you have a bird feeder in your yard that attracts the deer, we can get in trouble for that.” (Emphasis added.) Judge Sweeney added that an old woman putting bird feed into a feeder would get a ticket as well if the deer were to feed upon it.
The trial court found appellant guilty of violating 6 NYCRR 189.3 (b) and imposed a $150 fine and a mandatory $75 surcharge. The court permitted payment of the fine and surcharge in weekly installments of $10, because of appellant’s indigency.
Discussion
Regardless of whether appellant preserved an issue for appeal, this court, as an intermediate appellate court, has the discretion to reach an unpreserved legal issue where the interests of justice so require. (CPL 470.15 [1], [3] [c]; [6] [a].) Respondent correctly points out that appellant did not preserve various issues at trial. The court, however, will review appellant’s insufficiency of the evidence claim in the interest of justice, as this case raises many important issues of constitutional dimension. (See People v Foster, 87 AD3d 299 [2d Dept 2011].)
1. Insufficiency of the Evidence
An appellate review of the legal sufficiency of the evidence requires a court to consider whether, “after viewing the evidence in the light most favorable to the prosecution” (People v Khan, 18 NY3d 535, 541 [2012]), and “indulging in all reasonable inferences in the People’s favor” (People v Bueno, 18 NY3d 160, 169 [2011]), “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” (Khan, 18 NY3d at 541.)
Appellant was charged with violating 6 NYCRR 189.3 (b), which states in pertinent part: “No person shall feed wild white-tailed deer or wild moose at any time in New York State . . . .” The subdivision continues on to list exceptions, some of which raise questions as to ambiguity and vagueness and contradict the broad prohibition of not feeding deer.[5] “Feed” or “feeding” is defined as “the act of using, placing, giving, exposing, *626 depositing, distributing or scattering any material, or any act to maintain the availability of such material, that attracts wild white-tailed deer to feed on such material including the distribution of such material in deer wintering areas.” (6 NYCRR 189.2 [f].) Yet the exceptions clearly and specifically allow the feeding of deer through deer food crops or agricultural planting.
Appellant testified that the photographs do not personally identify him feeding any deer in his backyard where he placed the apples and pears. There was no independent evidence presented that any deer were feeding on any materials in appellant’s backyard. There was no independent evidence presented that any white-tailed deer even entered appellant’s backyard. The actual feeding by deer on the food material in question, however, is not necessary under the regulation. Officer Bello did not dispute that he had no evidence that appellant placed the apples and pears by the tree stand where the officer observed evidence of deer droppings and a photograph of a deer feeding. There was no evidence presented showing appellant placed any materials by the tree stand in the woods. There was no evidence presented that appellant or his girlfriend owned the woods in which the tree stand was located. There was no evidence that anyone was hunting in the area of or from the tree stand. Therefore, the existence of the tree stand and materials in or near the tree stand are irrelevant for purposes of the prohibition of “feeding” under the regulations.
Appellant, however, candidly admitted during the trial that among the wildlife that feed on the material, deer do in fact come to eat the apples and pears in his backyard, and that he “can’t help that.” (Tr at 23.) Therefore, although there was no independent evidence establishing each element of the violation, appellant’s admission of placing food in his backyard that obviously attracted deer established that he violated 6 NYCRR 189.3 (b).
Drawing all reasonable inferences in favor of the People (People v Bueno), a reasonable trier of fact could find beyond a reasonable doubt that appellant committed the act of placing or depositing material that attracts deer to feed on such material. The appeal, however, does not end here.
*627 2. Constitutionality — Vagueness and Overbreadth
The general rule in New York is that an “exception not explicitly raised at trial may not be initially considered on appeal.” (Champelle v Coombe, 567 F Supp 345, 347 [SD NY 1983].) An intermediate appellate court, however, may “consider an objection first raised on appeal if the objection involves an alleged violation of a fundamental constitutional right.” (Id. [emphasis added].) Intermediate appellate courts in New York are “vested with the discretion to review unpreserved claims in the interest of justice.” (People v Foster, 87 AD3d 299, 304 [2d Dept 2011] [citation omitted]; see also People v Ignatowski, 70 AD3d 1472 [4th Dept 2010].) When an appellant raises for the first time on appeal a question of constitutionality concerning a fundamental constitutional right, “[n]o exception [to the general rule] is necessary to preserve for appellate review a deprivation of [that] constitutional right.” (People v Gray, 71 AD2d 295, 297 [4th Dept 1979]; see also People v Bradner, 107 NY 1, 5 [1887].)
Appellant, who is now represented by counsel, for the first time on this appeal, challenges the constitutionality of the regulation under which he was found guilty on the ground that it is so vague as to violate the Due Process Clause of the 14th Amendment, and that it is also overbroad and violates the First Amendment of the United States Constitution. Therefore, this court accepts jurisdiction to review these issues, although not raised at the trial level by the appellant who was pro se at that time, in the interest of justice,[6] as well as under the premise in Gray.
A. Vagueness
The Due Process Clause guards against a conviction under a law that “fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.” (Holder v Humanitarian Law Project, 561 US —, —, 130 S Ct 2705, 2718 [2010].) The classical notice doctrine provides that no person shall receive punishment for conduct not reasonably understood as prohibited. (People v Stuart, 100 NY2d 412, 420 [2003].)
Courts have developed a two-part test for vagueness challenges under the Due Process Clause. A court must determine *628 (1) whether the law is “sufficiently definite ‘to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute’ ” (People v Stuart, 100 NY2d at 420, quoting People v Nelson, 69 NY2d 302, 307 [1987]; United States v Lambert, 446 F Supp 890 [D Conn 1978]); and (2) whether the enactment provides officials with clear standards for enforcement. (Stuart, 100 NY2d at 420.)
A defendant may challenge a statute as unconstitutionally vague on its face and/or as applied in his or her specific case. An as-applied challenge asks the court whether a statute’s application to the defendant under the facts of the case is constitutional. (Id. at 421.) By contrast, a facial challenge “requires the court to examine the words of the statute on a cold page and without reference to the defendant’s conduct.” (Id.)
In the instant matter, appellant has made both a facial challenge and an as-applied challenge to the regulation itself. It is clear from the record that appellant attracted deer by throwing apples and pears into his backyard; he admitted to feeding wildlife in his backyard, from squirrels to birds, and in so doing, on his part, also fed the deer. The questions, then, are (1) whether the regulation, on its face, provides fair notice of what actions or behavior are prohibited and (2) whether the regulation as applied to appellant herein is constitutional. (Holder v Humanitarian Law Project.)
1. Facially Vague
Appellant argues that the failure of the regulation to define the term, “material,” results in confusion over what exactly is prohibited from being placed outside — fruit trees? strawberry plants? berry bushes? fallen fruit from a planted tree or bush? planted salad greens? loose fruit? bird feed? While respondent correctly points out that vagueness does not necessarily result from the failure of a criminal statute or regulation to define every term contained therein (People v Garson, 6 NY3d 604 [2006]), this court finds that the failure of 6 NYCRR part 189 to define “material” in any of its subdivisions leaves it up to individuals, including law enforcement officers, to define the term as they see fit, resulting in constitutionally defective ambiguity and vagueness in 6 NYCRR 189.3 (b).[7] As Judge Sweeney *629 pointed out during the trial, one cannot even place bird feed in a bird feeder without risk of being arrested.
The regulation, 6 NYCRR 189.3 (b), read with 6 NYCRR 189.2 (f), does not adequately define the offense of feeding white-tailed deer with sufficient clarity so a person of ordinary intelligence would understand that which is prohibited. (Herndon v Lowry, 301 US 242 [1937].) In addition, nowhere in 6 NYCRR part 189 is any “standard of conduct. . . specified at all.” (Hoffman Estates v Flipside, Hoffman Estates, Inc., 455 US 489, 495 n 7 [1982].)
The forbidden fruit issue for this regulation is hopelessly vague. The vagueness results in the regulation failing to provide a “reasonably ascertainable standard of guilt.” (Herndon, 301 US at 264.) A person of ordinary intelligence is unable to determine if his or her conduct is “feeding,” thereby illegal, or what is included in the term, “material.” (United States v Lambert, 446 F Supp 890 [1978].) For example, it is not clear if the conduct of placing a garbage can (outside for pickup) that is filled with material that attracts white-tailed deer violates the regulation. It is unclear whether the planting of fruit trees on private residential property is prohibited if the fruit on the trees, or fallen fruit, attract white-tailed deer to feed. The regulation is not only unconstitutionally vague with regard to what constitutes material and therefore prohibited, but what type of conduct is prohibited. Is planting of fruit trees legal, even if they attract deer, but placing out fruit is illegal?
Moreover, the regulation fails to provide even minimal guidelines to law enforcement, thereby allowing for unpredictable and inconsistent enforcement and prosecution, which violates the Fourteenth Amendment Due Process Clause. There is the potential under this regulation for law enforcement agents and prosecutors to pursue individuals on a standardless basis, thereby allowing for an end run around the constitutional safeguards necessary in criminal statutes and regulations. (Smith v Goguen, 415 US 566 [1974],)[8] The regulation, as writ *630 ten, allows for, and even encourages, arbitrary and discriminatory enforcement — law enforcement agents can pursue some cases and not others, depending on how they arbitrarily define material and/or prohibited conduct, since a planted fruit tree or bush on property is not prohibited, but the placing of its fallen fruit is prohibited. (Hill v Colorado, 530 US 703 [2000].)
2. As Applied to Appellant
Because the regulation is facially vague and therefore unconstitutional, its application to appellant is also unconstitutional. The trial transcript clearly shows appellant was confused as to what the regulation prohibits — not only did he have no idea that placing old fruit in his yard for the lawful purpose of feeding other animals caused him to violate the regulation, but even after the trial judge repeatedly explained what type of conduct she would consider a violation of the regulation, appellant still did not understand why or how his conduct of tossing the fruit in his private yard violated the regulations. Query: If a tree or other foliage planted in appellant’s backyard that attracts deer does not cause him to violate the regulation, why does the placing of other “material” in his backyard constitute unlawful “feeding?”
It is apparent that his confusion arose from the vagueness of the regulation in failing to adequately warn people what conduct and what material violates the prohibition on feeding white-tailed deer. The trial court’s various, earnest attempts to explain the application of the regulation not only to appellant, but to the general public, did little to clarify appellant’s confusion. Indeed this court has confusion regarding the many “exceptions” that allow for the feeding of deer by crops and other means.
As applied to appellant, the vagueness of the regulation, combined with its ambiguity, deprived him of his due process rights under the Fourteenth Amendment. Even if appellant had read this regulation, it is clear he would have been confused and would not have been on notice that throwing rotting fruit into his yard for otherwise lawful purposes could cause him to violate the regulation, while foliage and trees in his backyard that might attract deer would not be a violation. Query: Can a *631 tree that is not forbidden bear forbidden fruit? According to the regulation — yes! If the fruit from the tree is gathered and placed in another location in the same yard, it becomes forbidden. The regulation is therefore also unconstitutional as applied to appellant.
B. Overbreadth
Generally, a court will not hear a challenge to a statute from a person to whom the statute is constitutionally applicable on the ground that its application to others may infringe upon their constitutional rights. (People v Foley, 94 NY2d 668, 677 [2000].) The First Amendment overbreadth doctrine provides that “a statute that attempts to proscribe constitutionally protected speech will not be enforced unless a limiting construction effectively removes the apparent threat to constitutionally protected expression.” (Id. at 677-678.) Thus, although a defendant’s conduct may be unprotected by the First Amendment, he nonetheless may challenge a statute as overbroad on behalf of others when the provision’s very existence potentially chills constitutionally protected expression. (People v Barton, 8 NY3d 70, 75 [2006].)
The test for determining overbreadth is whether the law on its face prohibits a substantial amount of protected conduct. (Id.) Merely conceiving of impermissible applications of a statute does not render it unconstitutionally overbroad. (Id. at 75-76.) When mere conduct, not speech, is involved, the overbreadth of the statute must be “substantial” to succeed on a challenge of its constitutionality. (Foley, 94 NY2d at 678.)
There is no law on the issue of whether “feeding” or “attracting]” white-tailed deer constitutes protected First Amendment speech. The courts have consistently held that acts such as soliciting or displaying, however, are acts of communication, even if they do not describe the content of one’s views. (See Foley, 94 NY2d at 679; see also Reno v American Civil Liberties Union, 521 US 844 [1997]; Barton, 8 NY3d at 75.) Therefore, this court finds the act of feeding or attracting white-tailed deer can be an act of expressive conduct of conservation prohibited by the content-neutral regulation in question.
“ [C] ontent-neutral regulations of time, place, and manner of expression are enforceable if they are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.” (Barton, 8 NY3d at 76, quoting International Soc. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge, 876 F2d 494, 497 [5th Cir *632 1989].) 6 NYCRR 189.2 (f) and 189.3 (b) certainly serve a purpose unrelated to the content of the expression. The alleged purpose of the regulation is to prevent “chronic wasting disease” (hereinafter, CWD), “a fatal transmissible neurodegenerative disease which endangers the health and welfare of wildlife populations and captive cervids [and] has been confirmed to exist in New York State.” (6 NYCRR 189.1.) There is a genuine dispute as to whether this regulation serves a significant governmental interest in preventing the spread of CWD. Without addressing the merits of CWD regulations as applicable in New York, the court must ask if the gathering of deer around a legal food plot as opposed to the proverbial apple tree is not also a concern for CWD transmission?
A regulation of time, place, or manner of protected speech/ communication, however, must be narrowly tailored to serve the government’s legitimate interest. (Barton, 8 NY3d at 76.) The narrowly tailored requirement is satisfied as long as the means chosen are not substantially broader than necessary to achieve the government’s interest. (Ward v Rock Against Racism, 491 US 781, 799-800 [1989].)
6 NYCRR 189.3 (b) was specifically designed to prohibit citizens from feeding and attracting white-tailed deer, which “artificially concentrates the animals and creates extensive face-to-face contact and increased contact with urine and feces, thereby increasing the risk of CWD transmission.” (NY Reg, July 30, 2003 at 9].) While the regulation as applied in this case does validly prohibit conduct not protected under the First Amendment, this court finds it reaches substantially further beyond that justified by the governmental interest, as it is not disputed that feeding other animals that inhabit the woods, fields and backyards is legal and not prohibited. (People v Foley, 94 NY2d at 678.) It is also not disputed that planting food crops, fruit trees, or cutting brush for deer to eat does not “concentrate [ ] the animals and create[ ] extensive face-to-face contact” with deer; this type of feeding is encouraged by the DEC to conserve the deer population.
Judge Sweeney put forth the overbroad/overbreadth argument best in her good faith colloquy with appellant:
“[Y]ou are not allowed to throw those apples out there. You are not permitted to do it ... I understand that if you have a bird feeder in your yard that attracts the deer, we can get in trouble for that . . . any old lady putting bird feed into a feeder will *633 get a ticket as well if deer feed upon the food.”
Surely punishing someone for a white-tailed deer getting into his or her bird feeder was not within the ambit of the legislative purpose in trying to prevent CWD. A reasonable interpretation of the regulation punishes any feeding of deer regardless of method or intent, essentially creating a strict liability. The regulation prohibits “a real and substantial amount of constitutionally protected conduct,” i.e., in this case, any legal activity that may attract or conserve white-tailed deer, whether or not the animals actually feed. (People v Barton, 8 NY3d at 75.)
Not only does this regulation criminalize any type of feeding of deer, but broad language like “placing,” “exposing,” or “depositing” creates myriad situations in which one could violate the regulation without any intention of feeding deer or moose. While the regulation is content neutral, it allows for “unbridled discretion in the hands of. . . officials” with enforcing it, there is no mechanism to remedy “[a]ny [facial] inadequacy,” the regulation is not “narrowly tailored to serve a significant governmental interest,” and the regulation leaves no alternatives for the lawful feeding of other animals, because any material that incidentally attracts deer places someone in violation. (Ward v Rock Against Racism, 491 US at 793, 796, 798, 802.) Clearly, the bird feeder or the feeding of turkeys or other animals is not prohibited and is encouraged as a security to protect animals from abuse.
Additionally, the regulation does not require that the deer actually feed on anything, but rather that the deer are merely attracted to feed on such material. This substantially increases the amount of conduct prohibited under the regulation and curtails constitutionally protected conduct, such as feeding other animals, the planting of certain food crops intended for human consumption or the otherwise lawful landscaping of private property. It allows for law enforcement officials to randomly issue a citation if they observe what they believe to be “material” that may attract deer on private property. (Id. at 793.)
Finally, the regulation lacks any definition for “material,” except that it is something a deer might feed upon; hence, the trial judge’s reference to a bird feeder. While 6 NYCRR 189.3 (b) does delineate some exceptions to deer feeding like professional agriculture and feeding of livestock, there is still a substantial amount of innocent conduct that the “feeding” of “material” encompasses. For example, if a person “uses” or “maintains” an apple tree in his or her backyard and a white-tailed deer is *634 attracted to or feeds upon the apples, then that person has committed an offense. Similarly, if a person takes out the garbage and shuts the lid on the garbage bin, he or she “deposited” “material” that may attract white-tailed deer. As the regulations currently read, one would be guilty under 6 NYCRR 189.3 (b) if white-tailed deer were to be attracted by or feed upon “material” on a large piece of land of which the landowner has no knowledge and did not place there, because it could be said that by not removing said material, the landowner acts to “maintain the availability of such material, that attracts wild white-tailed deer to feed on such material.” (6 NYCRR 189.2 [f]).
The broad sweeping language of the regulation chills constitutionally protected conduct and leaves law enforcement in a position to arbitrarily enforce the law. (See Smith v Goguen, 415 US 566 [1974].) The literal meaning of words like “material,” “deposit [ ]” and “maintain” leave open an application of the regulation far beyond what the legislature plausibly intended.
Therefore, 6 NYCRR 189.2 and 189.3 (b) must be deemed unconstitutional as a violation of the First Amendment to the United States Constitution’s right to free expression as over-broad.
Based on the foregoing, it is ordered that appellant’s within appeal is granted; and it is further ordered that the decision of the Town of Highland Justice Court is reversed and the simplified information is dismissed with prejudice.

. Hunting regulations containing specific species, including deer, may be found in 6 NYCRR part 1.

. DEC Officer Michael Bello, a trained and well-qualified officer, responded to the call.

. There was no testimony as to why the trail camera was there or who set it up.

. There is no indication in the record that appellant ever stated he placed any of the fruit delivered to him at any location other than the yard immediately adjacent to his house. In fact, he denied placing fruit anywhere other than the immediate backyard of the house.
During additional conversation between appellant and Officer Bello on November 1, 2009, a pickup truck pulled up to the house. Appellant identified the man in the pickup truck to the Officer as his girlfriend’s ex-husband, who, he later learned, also happened to be the anonymous complainant. Officer Bello had observed the man drive up to the house on several occasions to pay child support payments to appellant’s girlfriend after appellant left the house.

. The exceptions include persons feeding white-tailed deer (1) under a license for scientific research, mitigation of wildlife damage or nuisance problems, or wildlife reduction programs; (2) by planting, cultivating or harvesting of crops directly associated with bona fide agricultural practices, including planted wildlife food plots; (3) by distribution of food material for *626 livestock directly associated with bona fide agricultural practices; (4) by distribution of food material for legally possessed captive animals of the Genus Cervus or the Genus Odocoileus or the Genus Alces; or (5) by cutting of trees or brush.

. A citizen of the State of New York should not be arrested and charged with a violation of law that is not readily understood by a person of average intelligence.

. For example, it appears from the face of the regulation that white-tailed deer that are attracted to and eat oats grown for bona fide agricultural purposes is not a violation of the regulation, if the deer eat the oats where *629 they are grown. It is unclear, however, whether there is a violation if those same oats are gathered and placed elsewhere, and attract white-tailed deer who then eat them.

. The regulation carves out several exceptions for “planting, cultivating or harvesting of crops,” including wildlife “food plots,” associated with “bona fide agricultural practices.” (6 NYCRR 189.3 [b] [2].) “Bona fide agricultural practices” is also not defined in the regulations, leaving one to ask whether that includes the planting of food crops and/or fruit trees by individuals for *630 personal use or for the purpose of feeding and/or attracting deer or moose. If it does not, then law enforcement agents have the unfettered discretion to enter a property of their choice and issue a citation if the person has planted any crops or other “materials” that may attract white-tailed deer, even if the officer has not directly observed any deer feeding on any of the material.