=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 139
The People &c.,
            Respondent,
        v.
Marquan M.,
            Appellant.
_____
County of Albany,
        Intervenor-Respondent.


        Corey Stoughton, for appellant.
        Thomas Marcelle, for intervenor-respondent County of
Albany.
        Advocates for Children of New York et al., amici
curiae.


GRAFFEO, J.:

        Defendant, a 16-year-old high school student,

anonymously posted sexual information about fellow classmates on

a publicly-accessible internet website.  He was criminally

prosecuted for "cyberbullying" under a local law enacted by the

- 1 -

Albany County Legislature.  We are asked to decide whether this cyberbullying statute comports with the Free Speech Clause of the First Amendment.

I

Bullying by children in schools has long been a prevalent problem but its psychological effects were not studied in earnest until the 1970s (see Hyojin Koo, A Time Line of the Evolution of School Bullying in Differing Social Contexts, 8 Asia Pacific Educ Rev 107 [2007]).  Since then, "[b]ullying among school-aged youth" has "increasingly be[en] recognized as an important problem affecting well-being and social functioning," as well as "a potentially more serious threat to healthy youth development" (Tonja R. Nansel et al., Bullying Behaviors Among U.S. Youth, 285 Journal of the Am Med Assn 2094 [2001]).  At its core, bullying represents an imbalance of power between the aggressor and victim that often manifests in behaviors that are "verbal (e.g., name-calling, threats), physical (e.g., hitting), or psychological (e.g., rumors, shunning/exclusion)" (id. at 2094; see Koo, supra at 112).  Based on the recognized harmful effects of bullying, many schools and communities now sponsor anti-bullying campaigns in order to reduce incidents of such damaging behaviors.

Educators and legislators across the nation have endeavored to craft policies designed to counter the adverse impact of bullying on children.  New York, for example, enacted

the "Dignity for All Students Act" in 2010 (see L 2010, ch 482, § 2; Education Law §§ 10 et seq.), declaring that our State must "afford all students in public schools an environment free of discrimination and harassment" caused by "bullying, taunting or intimidation" (Education Law § 10). In furtherance of this objective, the State prohibited discrimination and bullying on public school property or at school functions (see Education Law § 12 [1]). The Act relied on the creation and implementation of school board policies to reduce bullying in schools through the appropriate training of personnel, mandatory instruction for students on civility and tolerance, and reporting requirements (see Education Law § 13). The Act did not criminalize bullying behaviors; instead, it incorporated educational penalties such as suspension from school.

    Despite these efforts, the problem of bullying continues, and has been exacerbated by technological innovations and the widespread dissemination of electronic information using social media sites. The advent of the internet with "twenty-four hour connectivity and social networking" means that "[b]ullying that begins in school follows students home every day" and "bullying through the use of technology can begin away from school property" (L 2012, ch 102, § 1). Regardless of how or where bullying occurs, it "affects the school environment and disrupts the educational process, impeding the ability of students to learn and too often causing devastating effects on

students' health and well-being" (id.; see e.g. American Psychiatric Assn, Resolution on Bullying Among Children & Youth [2004]).  The use of computers and electronic devices to engage in this pernicious behavior is commonly referred to as "cyberbullying" (see e.g. Education Law § 11 [8]; L 2012, ch 102, § 1; Simone Robers et al., Indicators of School Crime & Safety: 2012, at 44, Natl Ctr for Educ Statistics, U.S. Depts of Educ & Justice [2013]).  Unlike traditional bullying, victims of cyberbullying can be "relentlessly and anonymously attack[ed] twenty-four hours a day for the whole world to witness.  There is simply no escape".[1]

The Dignity for All Students Act did not originally appear to encompass cyberbullying, particularly acts of bullying that occur off school premises.  As the ramifications of cyberbullying on social networking sites spilled into the educational environment, in 2012, the State Legislature amended the Act to expand the types of prohibited bullying conduct covered by its provisions.  It added a proscription on bullying that applied to "any form of electronic communication" (Education Law § 11 [8]), including any off-campus activities that "foreseeably create a risk of substantial disruption within the school environment, where it is foreseeable that the conduct, threats, intimidation or abuse might reach school property"

_____

[1] Naomi Harlin Goodno, How Public Schools Can Constitutionally Halt Cyberbullying, 46 Wake Forest L Rev 641, 641 (2011).

(Education Law § 11 [7]).

Before the addition of the 2012 amendments to the
Dignity for All Students Act, elected officials in Albany County
decided to tackle the problem of cyberbullying.  They determined
there was a need to criminalize such conduct because the "State
Legislature ha[d] failed to address th[e] problem" of "non-
physical bullying behaviors transmitted by electronic means"
(Albany County Local Law No. 11 of 2010, § 1).  In 2010, the
Albany County Legislature adopted a new crime -- the offense of
cyberbullying  -- which was defined as

> "any act of communicating or causing a
> communication to be sent by mechanical or
> electronic means, including posting
> statements on the internet or through a
> computer or email network, disseminating
> embarrassing or sexually explicit
> photographs; disseminating private, personal,
> false or sexual information, or sending hate
> mail, with no legitimate private, personal,
> or public purpose, with the intent to harass,
> annoy, threaten, abuse, taunt, intimidate,
> torment, humiliate, or otherwise inflict
> significant emotional harm on another person"
> (id. § 2)

The provision outlawed cyberbullying against "any minor or
person" situated in the county (id. § 3).[2]  Knowingly engaging in
this activity was deemed to be a misdemeanor offense punishable
by up to one year in jail and a $1,000 fine (see id. § 4).  The

---

[2] The term "person" was broadly defined to include "any
natural person, individual, corporation, unincorporated
association, proprietorship, firm, partnership, joint venture,
joint-stock association, or other entity or business organization
of any kind" (Albany County Local Law No. 11 of 2010, § 2).

statute, which included a severability clause (see id. § 7), became effective in November 2010.

## II

A month later, defendant Marquan M., a student attending Cohoes High School in Albany County, used the social networking website "Facebook" to create a page bearing the pseudonym "Cohoes Flame." He anonymously posted photographs of high-school classmates and other adolescents, with detailed descriptions of their alleged sexual practices and predilections, sexual partners and other types of personal information. The descriptive captions, which were vulgar and offensive, prompted responsive electronic messages that threatened the creator of the website with physical harm.

A police investigation revealed that defendant was the author of the Cohoes Flame postings. He admitted his involvement and was charged with cyberbullying under Albany County's local law. Defendant moved to dismiss, arguing that the statute violated his right to free speech under the First Amendment. After City Court denied defendant's motion, he pleaded guilty to one count of cyberbullying but reserved his right to raise his constitutional arguments on appeal. County Court affirmed, concluding that the local law was constitutional to the extent it outlawed such activities directed at minors, and held that the application of the provision to defendant's Facebook posts did not contravene his First Amendment rights. A Judge of this Court

granted defendant leave to appeal (21 NY3d 1043 [2013]).

III

Defendant contends that Albany County's cyberbullying law violates the Free Speech Clause of the First Amendment because it is overbroad in that it includes a wide array of protected expression, and is unlawfully vague since it does not give fair notice to the public of the proscribed conduct.  The County concedes that certain aspects of the cyberbullying law are invalid but maintains that those portions are severable, rendering the remainder of the act constitutional if construed in accordance with the legislative purpose of the enactment. Interpreted in this restrictive manner, the County asserts that the cyberbullying law covers only particular types of electronic communications containing information of a sexual nature pertaining to minors and only if the sender intends to inflict emotional harm on a child or children.

Under the Free Speech Clause of the First Amendment, the government generally "has no power to restrict expression because of its message, its ideas, its subject matter, or its content" (United States v Stevens, 559 US 460, 468 [2010] [internal quotation marks omitted]).  Consequently, it is well established that prohibitions of pure speech must be limited to communications that qualify as fighting words, true threats, incitement, obscenity, child pornography, fraud, defamation or statements integral to criminal conduct (see United States v

Alvarez, __ US __, 132 S Ct 2537, 2544 [2012]; Brown v

Entertainment Merchants Assn., __ US __, 131 S Ct 2729, 2733

[2011]; People v Dietze, 75 NY2d 47, 52 [1989]).  Outside of such

recognized categories, speech is presumptively protected and

generally cannot be curtailed by the government (see United

States v Alvarez, 132 S Ct at 2543-2544; Brown v Entertainment

Merchants Assn., 131 S Ct at 2734; United States v Stevens, 559

US at 468-469).

          Yet, the government unquestionably has a compelling

interest in protecting children from harmful publications or

materials (see Reno v American Civil Liberties Union, 521 US 844,

875 [1997]; see also Brown v Entertainment Merchants Assn., 131

S Ct at 2736; see generally Bethel School Dist. No. 403 v Fraser,

478 US 675, 682 [1986]).  Cyberbullying is not conceptually

immune from government regulation, so we may assume, for the

purposes of this case, that the First Amendment permits the

prohibition of cyberbullying directed at children, depending on

how that activity is defined (see generally Brown v Entertainment

Merchants Assn., 131 S Ct at 2735-2736, 2741; cf. United States v

Elonis, 730 F3d 321 [3d Cir 2013] [affirming conviction premised

on threatening Facebook posts], cert granted __ US __ [June 16,

2014]).  Our task therefore is to determine whether the specific

statutory language of the Albany County legislative enactment can

comfortably coexist with the right to free speech.[3]

Challenges to statutes under the Free Speech Clause are usually premised on the overbreadth and vagueness doctrines. A regulation of speech is overbroad if constitutionally-protected expression may be "chilled" by the provision because it facially "prohibits a real and substantial amount of" expression guarded by the First Amendment (People v Barton, 8 NY3d 70, 75 [2006]). This type of facial challenge, which is restricted to cases implicating the First Amendment, requires a court to assess the wording of the statute -- "without reference to the defendant's conduct" (People v Stuart, 100 NY2d 412, 421 [2003]) -- to decide whether "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep" (United States v Stevens, 559 US at 473 [internal quotation marks omitted]). A law that is overbroad cannot be validly applied against any individual (see People v Stuart, 100 NY2d at 421, citing Tribe, American Constitutional Law § 12-32, at 1036 [2d ed 1988]). In contrast, a statute is seen by the courts as vague if "it fails to give a citizen adequate notice of the nature of proscribed conduct, and permits arbitrary and discriminatory enforcement" (People v Shack, 86 NY2d 529, 538 [1995]). Hence, the government has the burden of demonstrating that a regulation of speech is constitutionally

---

[3] We offer no opinion on whether cyberbullying should be a crime or whether there are more effective means of addressing this societal problem outside of the criminal justice system.

permissible (see United States v Playboy Entertainment Group, 529 US 803, 816-817 [2000]; cf. People v Davis, 13 NY3d 17, 23 [2009]).

A First Amendment analysis begins with an examination of the text of the challenged legislation since "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers" (United States v Williams, 553 US 285, 293 [2008]). In this regard, fundamental principles of statutory interpretation are controlling. Chief among them is the precept that "clear and unequivocal statutory language is presumptively entitled to authoritative effect" (People v Suber, 19 NY3d 247, 252 [2012]; see e.g. People v Williams, 19 NY3d 100, 103 [2012]).

Based on the text of the statute at issue, it is evident that Albany County "create[d] a criminal prohibition of alarming breadth" (United States v Stevens, 559 US at 474). The language of the local law embraces a wide array of applications that prohibit types of protected speech far beyond the cyberbullying of children (see id. at 473-474; People v Barton, 8 NY3d at 75). As written, the Albany County law in its broadest sense criminalizes "any act of communicating . . . by mechanical or electronic means . . . with no legitimate . . . personal . . . purpose, with the intent to harass [or] annoy. . . another person." On its face, the law covers communications aimed at adults, and fictitious or corporate entities, even though the

county legislature justified passage of the provision based on the detrimental effects that cyberbullying has on school-aged children.  The county law also lists particular examples of covered communications, such as "posting statements on the internet or through a computer or email network, disseminating embarrassing or sexually explicit photographs; disseminating private, personal, false or sexual information, or sending hate mail."  But such methods of expression are not limited to instances of cyberbullying -- the law includes every conceivable form of electronic communication, such as telephone conversations, a ham radio transmission or even a telegram.  In addition, the provision pertains to electronic communications that are meant to "harass, annoy . . . taunt . . . [or] humiliate" any person or entity, not just those that are intended to "threaten, abuse . . . intimidate, torment . . . or otherwise inflict significant emotional harm on" a child.  In considering the facial implications, it appears that the provision would criminalize a broad spectrum of speech outside the popular understanding of cyberbullying, including, for example:  an email disclosing private information about a corporation or a telephone conversation meant to annoy an adult.

The County admits that the text of the statute is too broad and that certain aspects of its contents encroach on recognized areas of protected free speech.  Because the law "imposes a restriction on the content of protected speech, it is

invalid unless" the County "can demonstrate that it passes strict scrutiny -- that is, unless it is justified by a compelling government interest and is narrowly drawn to serve that interest" (<u>Brown v Entertainment Merchants Assn.</u>, 131 S Ct at 2738).  For this reason, the County asks us to sever the offending portions and declare that the remainder of the law survives strict scrutiny.  What remains, in the County's view, is a tightly circumscribed cyberbullying law that includes only three types of electronic communications sent with the intent to inflict emotional harm on a child:  (1) sexually explicit photographs; (2) private or personal sexual information; and (3) false sexual information with no legitimate public, personal or private purpose.

It is true, as the County urges, that a court should strive to save a statute when confronted with a Free Speech challenge (<u>see e.g.</u> <u>People ex rel. Alpha Portland Cement Co. v Knapp</u>, 230 NY 48, 62-63 [1920], <u>cert denied</u> 256 US 702 [1921]).  But departure from a textual analysis is appropriate only if the statutory language is "fairly susceptible" to an interpretation that satisfies applicable First Amendment requirements (<u>People v Dietze</u>, 75 NY2d at 52; <u>see e.g.</u> <u>United States v Stevens</u>, 559 US at 481).  The doctrine of separation of governmental powers prevents a court from rewriting a legislative enactment through the creative use of a severability clause when the result is incompatible with the language of the statute (<u>see e.g. People v</u>

Dietze, 75 NY2d at 52-53; Reno v American Civil Liberties Union,

521 US at 884-885).  And special concerns arise in the First

Amendment context -- excessive judicial revision of an overbroad

statute may lead to vagueness problems because

> "the statutory language would signify one
> thing but, as a matter of judicial decision,
> would stand for something entirely different.
> Under those circumstances, persons of
> ordinary intelligence reading [the law] could
> not know what it actually meant" (People v
> Dietze, 75 NY2d at 53; see e.g. City of
> Houston, Texas v Hill, 482 US 451, 468-469
> [1987]).

We conclude that it is not a permissible use of

judicial authority for us to employ the severance doctrine to the

extent suggested by the County or the dissent.  It is possible to

sever the portion of the cyberbullying law that applies to adults

and other entities because this would require a simple deletion

of the phrase "or person" from the definition of the offense.

But doing so would not cure all of the law's constitutional ills.

As we have recently made clear, the First Amendment protects

annoying and embarrassing speech (see e.g. People v Golb, __ NY3d

__, 2014 NY Slip Op 03426 [May 13, 2014]; People v Dietze, 75

NY2d at 52-53), even if a child may be exposed to it (see Brown v

Entertainment Merchants Assn., 131 S Ct at 2736), so those

references would also need to be excised from the definitional

section.  And, the First Amendment forbids the government from

deciding whether protected speech qualifies as "legitimate," as

Albany County has attempted to do (see Snyder v Phelps, __ US __,

131 S Ct 1207, 1220 [2011], quoting <u>Erznoznik v Jacksonville</u>, 422
US 205, 210-211 [1975]; <u>cf.</u> <u>People v Shack</u>, 86 NY2d at 536-537).[4]

It is undisputed that the Albany County statute was
motivated by the laudable public purpose of shielding children
from cyberbullying.  The text of the cyberbullying law, however,
does not adequately reflect an intent to restrict its reach to
the three discrete types of electronic bullying of a sexual
nature designed to cause emotional harm to children.  Hence, to
accept the County's proposed interpretation, we would need to
significantly modify the applications of the county law,
resulting in the amended scope bearing little resemblance to the
actual language of the law.  Such a judicial rewrite encroaches
on the authority of the legislative body that crafted the
provision and enters the realm of vagueness because any person
who reads it would lack fair notice of what is legal and what
constitutes a crime.  Even if the First Amendment allows a
cyberbullying statute of the limited nature proposed by Albany
County, the local law here was not drafted in that manner.
Albany County therefore has not met its burden of proving that

---

[4] Contrary to the dissent's position, <u>People v Shack</u> (86
NY2d 529 [1995]) and <u>People v Stuart</u> (100 NY2d 412 [2003]) are
distinguishable because they addressed statutes that criminalized
conduct -- repeated telephone harassment and stalking -- without
regard to the content of any communication.  Here, however, the
Albany County law facially allows law enforcement officials to
charge a crime based on the communicative message that the
accused intends to convey, as evidenced by the fact that
defendant was prosecuted because of the offensive words he wrote
on Facebook.

the restrictions on speech contained in its cyberbullying law survive strict scrutiny.

* * *

There is undoubtedly general consensus that defendant's Facebook communications were repulsive and harmful to the subjects of his rants, and potentially created a risk of physical or emotional injury based on the private nature of the comments. He identified specific adolescents with photographs, described their purported sexual practices and posted the information on a website accessible world-wide. Unlike traditional bullying, which usually takes place by a face-to-face encounter, defendant used the advantages of the internet to attack his victims from a safe distance, twenty-four hours a day, while cloaked in anonymity. Although the First Amendment may not give defendant the right to engage in these activities, the text of Albany County's law envelops far more than acts of cyberbullying against children by criminalizing a variety of constitutionally-protected modes of expression. We therefore hold that Albany County's Local Law No. 11 of 2010 -- as drafted -- is overbroad and facially invalid under the Free Speech Clause of the First Amendment.

Accordingly, the order of County Court should be reversed and the accusatory instrument dismissed.

People v Marquan M.

No. 139

SMITH, J. (dissenting):

Albany County has conceded that certain provisions of its Cyber-Bullying Law are invalid. It seems to me that those provisions can be readily severed from the rest of the legislation and that what remains can, without any strain on its language, be interpreted in a way that renders it constitutionally valid.

The operative provision of the law says simply: "No person shall engage in Cyber-Bullying against any minor or person in the County of Albany." The County does not defend the law as it applies to adults, and the majority acknowledges that we may consider the statute as if the words "or person" were deleted (majority op at 13). But the majority finds irreparable constitutional flaws in the definition of Cyber-Bullying, which is as follows:

> "Cyber-Bullying shall mean any act of
> communicating or causing a communication to
> be sent by mechanical or electronic means,
> including posting statements on the internet
> or through a computer or email network,
> disseminating embarrassing or sexually
> explicit photographs; disseminating private,
> personal, false or sexual information, or
> sending hate mail, with no legitimate
> private, personal, or public purpose, with
> the intent to harass, annoy, threaten, abuse,
> taunt, intimidate, torment, humiliate, or

- 1 -

otherwise inflict significant emotional harm
on another person."

The County concedes that the words "embarrassing" and "hate mail" are "vague and thus unenforceable" (Brief of Intervenor-Respondent Albany County [County Brief] at 8 n 4). It argues, correctly I think, that these terms can be dealt with in the same way as the reference to "person" in the operative section: simply by crossing them out. Once these deletions are made, I see nothing in the law that renders it unconstitutional.

The majority, it seems, is troubled by two other aspects of the definition of "Cyber-Bullying": the requirement that the forbidden communications be made "with no legitimate private, personal or public purpose"; and the series of verbs -- "harass, annoy, threaten, abuse, taunt, intimidate, torment, humiliate" -- that precedes the words "or otherwise." Neither requires us to invalidate the law.

I grant that the words "no legitimate . . . purpose" are not remarkable for their precision. We have twice held, however, that they are clear enough to withstand a constitutional challenge for vagueness (People v Shack, 86 NY2d 529, 538 [1995] [holding valid a prohibition on the making of a telephone call "with intent to harass, annoy, threaten or alarm another person . . . with no purpose of legitimate communication"]; People v Stuart, 100 NY2d 412, 428 [2003] [holding valid an anti-stalking statute prohibiting a described course of conduct when engaged in "for no legitimate purpose"]). We said in Shack:

> "the phrase 'no purpose of legitimate
> communication' . . . notwithstanding its
> subjective quality, would be understood to
> mean the absence of expression of ideas or
> thoughts other than threats and/or
> intimidating or coercive utterances."

Similarly here, the phrase "no legitimate purpose" should be understood to mean the absence of expression of ideas or thoughts other than the mere abuse that the law proscribes.

It is true, as the majority says (majority op at 14 n 4) that the criminal conduct at issue in Shack and Stuart was different from the conduct at issue here -- but that does not make the words "no legitimate purpose" any more or less vague. The majority is also correct in saying that "the First Amendment forbids the government from deciding whether protected speech qualifies as 'legitimate'" (majority op at 13), but this begs the central question of what speech is "protected" and what is not. The Cyber-Bullying law prohibits a narrow category of valueless and harmful speech when the government proves, among other things, that the speaker had no legitimate purpose for engaging in it. The speech so prohibited is not protected speech.

As for the list of verbs beginning with "annoy" and ending with "humiliate," it is fair to read them, as the County urges, as "a non-exhaustive list of ways that the wrongdoer may formulate his or her intent to inflict emotional harm on the victim" (County Brief at 8). In other words, the acts within the scope of the Cyber-Bullying law -- disseminating sexually explicit photographs or private, personal, false or sexual

information -- are prohibited only where they are intended to
"inflict significant emotional harm" on the victim, and the verbs
merely serve as examples of ways in which significant emotional
harm may be inflicted.  That is not the only possible way to read
the text of the law, but it is a perfectly reasonable way --
indeed, the word "otherwise" seems to signal that the verbs
preceding it are only illustrative.  So read, the law does not
prohibit conduct intended to harass, annoy, threaten or the like
unless the actor specifically intended "significant emotional
harm."  I do not find such a prohibition to be unconstitutionally
vague or overbroad.

     In short, I think the majority makes too much of what
it sees as flaws in the draftsmanship of the Cyber-Bullying law.
The crux of the case, in my view, is whether Albany County
constitutionally may do what it is trying to do -- to prohibit
certain kinds of communication that have no legitimate purpose
and are intended to inflict significant emotional injury on
children.  The answer to this question is not self-evident.  The
First Amendment protects some extremely obnoxious forms of
speech, including insults offered to a dead soldier at his
funeral (Snyder v Phelps, 562 US ___, 131 S Ct 1207 [2011]) and
horrifyingly violent video games marketed to teenagers (Brown v
Entertainment Merchants Assn., 564 US  ___, 131 S Ct 2729
[2011]).  But Snyder itself makes clear that speech designed to
inflict serious emotional injury is protected only when, as in

*Snyder*, the speech is directed at a matter of public concern:

> "Whether the First Amendment prohibits holding Westboro liable for its speech in this case turns largely on whether that speech is of public or private concern, as determined by all the circumstances of the case . . . . [R]estricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest"

(131 S Ct at 1215; see also *Hustler Magazine, Inc. v Falwell*, 485 US 46, 53 [1988] [speech about a "public figure" is constitutionally protected even if uttered with intent to cause emotional distress because regulation of emotionally harmful speech about public figures would chill debate on public matters]).

It is thus clear that the emotional abuse involved in *Snyder* would not have been constitutionally protected if, like Marquan's remarks about his fellow students, it had referred to no matter of public importance and had been uttered purely out of private rage or spite. And the victims of the abuse in *Snyder* were adults; in that respect, the present case is a fortiori. The Albany County Cyber-Bullying law is valid.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed and accusatory instrument dismissed. Opinion by Judge Graffeo. Chief Judge Lippman and Judges Read, Rivera and Abdus-Salaam concur. Judge Smith dissents in an opinion in which Judge Pigott concurs.

Decided July 1, 2014